IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 26, 2017 at Knoxville

## STATE OF TENNESSEE v. TERRY CHARLES JORDAN

**Appeal from the Circuit Court for Bedford County**
**No. 18065      Forest A. Durard, Jr., Judge**

_____

### No. M2016-01067-CCA-R3-CD
_____

Following the Defendant's, Terry Charles Jordan's, guilty-pleaded conviction for felony failure to appear, the trial court imposed a sentence of four years' incarceration. The Defendant appeals, arguing that the trial court erred in enhancing his sentencing term to the maximum within the range because several of his felony convictions should have been merged. Following our review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Guy R. Dotson, Jr., Murfreesboro, Tennessee, for the appellant, Terry Charles Jordan.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Robert J. Carter, District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

On February 18, 2016, the Defendant entered an "open" guilty plea to failure to appear, a Class E felony. See Tenn. Code Ann. § 39-16-609. The State offered the following recitation of facts supporting the Defendant's plea:

> [B]ack in March of 2015 the [D]efendant entered pleas of guilty to several meth related charges and possession of a firearm during a dangerous felony

charge. There was an agreed-to sentence of [eight] years, a portion of it at [one hundred percent]. A portion of it at [thirty] percent.

I believe he was initially given a report date of April 20, 2015. Report to jail to begin serving the sentence or what he was supposed to do was come to court and turn himself in.

I believe he came to court that day and requested an additional day because he had a social security disability hearing that next day.

The [c]ourt granted him that relief and so put down an order that he was to report the next day on April 21, 2015, to jail to begin serving his sentence. He didn't report. It was several months later before he was apprehended.

The matter was set for sentencing.

At the outset of the sentencing hearing, the parties agreed that the Defendant was a Range II, multiple offender, subjecting him to a sentencing range of two to four years. See Tenn. Code Ann. § 40-35-112(b)(5). Other than admission of the pre-sentence report, neither side offered any proof.

The pre-sentence report reflected numerous convictions and probation violations. One indictment resulted in four felony convictions for the Defendant: "Schedule II Drugs: Meth" with a three-year sentence (offense date February 20, 2014); possession of firearm during the commission of dangerous felony with a five-year sentence (offense date February 20, 2014); "Schedule II Drugs: Meth" with a three-year sentence (offense date May 2, 2013); and "Schedule II Drugs: Meth" with a three-year sentence (offense date May 2, 2013). In 2006, he was convicted of another felony, "Schedule I Drugs," and sentenced to eight years in the Department of Correction; he entered into "boot camp" in 2008, which he completed; and his sentence expired on February 24, 2014.

The Defendant also had several misdemeanor drug convictions. He was convicted in 2013 of "Schedule II Drugs" (offense date November 9, 2012), for which he received an eleven-month and twenty-nine-day probationary sentence. He violated that probation on July 9, 2014, was ordered to serve thirty days, and his probation was extended. Probation for this offense was ultimately terminated after another violation on November 16, 2015. In 2003, he was convicted of "unlawful drug paraphernalia" and sentenced to eleven months and twenty-nine days on probation; a sentence that he violated and was ordered to serve on June 11, 2003. He had a conviction in 2002 for "marijuana possession." This eleven-month and twenty-nine-day suspended sentence was revoked following a probation violation, and he was ordered to serve forty-five days in jail. He

was returned to probation but was ordered to serve an additional 120 days when he violated the conditions of his sentence again. After yet a third violation, the sentence was revoked "in full."

The Defendant was also convicted of several driving-related offenses. He was convicted of driving under the influence and driving while his license was suspended on February 11, 2005, and his eleven-month and twenty-nine-day probationary sentence for those convictions was "revoked in full" on April 21, 2006. In 2004, he was convicted of driving while impaired. He was convicted of driving while his license was suspended on September 18, 2002, and again on October 10, 2002; he received a probationary sentence of six months for each of those convictions; and after twice violating those sentences, he was ordered to serve eleven months and twenty-nine days in jail.

The Defendant also had some criminal history as a minor. In 1998, at the age of fourteen, he was found in possession of drug paraphernalia and marijuana and was placed on supervised probation and instructed to attend "The Reality Program." In 1999, he was adjudicated delinquent for "use of coercion for urine on a minor who would not give him a urine specimen"; he was again placed on supervised probation. In February 2000, he was found in possession of a half-ounce bag of marijuana in a drug-free school zone. On September 23, 2000, the Defendant, along with several adults, was charged with theft over $1000 and aggravated burglary after breaking into a residence and stealing numerous items. The Defendant was then placed in the custody of the Department of Children's Services ("DCS"). He admitted, while in DCS custody, to frequent drug and alcohol use beginning at age 10.

The pre-sentence report also reflects that the Defendant obtained his GED in 2001, was separated from his wife, and was paying child support for his two children. The Defendant claimed that he had "worked at R.A.M. Concrete in Murfreesboro, which [was] owned by his uncle, Randy Morton, on and off since he was [thirteen] or [fourteen] years old." He also reported employment with "Tyson" and "Tennex/Pillsbury." Regarding his physical health, the Defendant stated that "his right ankle ha[d] screws, a plate and a rod, which ma[de] it difficult to walk some days," and that he applied for disability just prior to being incarcerated. The Defendant also admitted to frequent use of drugs and alcohol starting at an early age. Prior to being imprisoned, he "used marijuana, roxycodone, opana[,] and meth on a daily basis." According to the Defendant, his drug problem was "killing [him]" and "took [him] away from family." The Defendant requested help with his drug addiction.

In issuing the Defendant's sentence, the trial court found three applicable enhancement factors and one applicable mitigating factor. It utilized enhancement factor (1), that the Defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish his range; factor (8) that the Defendant, before trial

or sentencing, failed to comply with the conditions of a sentence involving release into the community; and factor (16), that the Defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(1), (8), (16). In mitigation, the trial court applied factor (1), that the Defendant's conduct neither threatened nor caused serious bodily injury. See Tenn. Code Ann. § 40-35-113(1). Applying all of those factors, the trial court ordered the Defendant to serve the maximum sentence in his range of four years. This appeal followed.

## ANALYSIS

On appeal, the Defendant argues that his four-year sentence is excessive and "should be adjusted" to the minimum sentence of two years. Specifically, he argues that trial court "failed to accurately consider [his] prior felony record" because some of his felony convictions merged. The State argues that the trial court did not abuse its discretion when it sentenced the Defendant to four years for his felony failure to appear conviction. We agree with the State.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). When an accused challenges the length and manner of service of a sentence, this court reviews the trial court's sentencing determination under an abuse of discretion standard accompanied by a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012).[1] Moreover, appellate courts may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2007). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

---

[1] Citing Tennessee Code Annotated section 40-35-401(d), the Defendant states that our review "is de novo on the record with a presumption that the trial court's determinations are correct." However, our supreme court in Bise specifically stated, "[A]lthough the statutory language continues to describe appellate review as de novo with a presumption of correctness," the 2005 revisions to the Sentencing Act "effectively abrogated the de novo standard of appellate review." 380 S.W.3d at 707.

In accordance with the broad discretion now afforded a trial court's sentencing decision, "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Bise, 380 S.W.3d at 706. This court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). Carter, 254 S.W.3d at 344.

In asserting that his sentence is excessive, the Defendant claims that the trial court failed to properly consider his felony record because several of those convictions merged. The Defendant was sentenced as a Range II, multiple offender. A defendant is classified as a Range II, multiple offender when the defendant has received "[a] minimum of two (2) but not more than four (4) prior felony convictions within the conviction class, a higher class, or within the next two (2) lower felony classes, where applicable[.]" Tenn. Code Ann. § 40-35-106(a)(1). Additionally, the statute provides,

> Except for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury or threatened bodily injury to the victim or victims, or convictions for the offense of aggravated burglary under § 39-14-403, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]

Tenn. Code Ann. § 40-35-106(b)(4). This is commonly known as the twenty-four-hour merger rule.

Although not specific, the trial court indicated in its sentencing ruling that "some" of the Defendant's felony convictions merged, stating, "[The Defendant] has got five felonies, prior felonies. Of course as I mentioned, there is some merger with those." Applying the twenty-four-hour merger rule, the Defendant's convictions for "Schedule II Drugs: Meth" and possession of firearm during the commission of dangerous felony both have the same offense date of February 20, 2014, and would therefore merge. Likewise, the Defendant's two convictions for "Schedule II Drugs: Meth" with the same offense date of May 2, 2013, would merge. Only two felony convictions were needed to establish the Defendant's Range II status; a status to which the parties agreed. However, "the '24-hour merger rule exception' applies only to the use of prior convictions to determine a defendant's range, not to determine the application of enhancement factor

-5-

(1)." State v. Lawrence Hailey, No. W2009-00759-CCA-R3-CD, 2010 WL 2219574, at *11 (Tenn. Crim. App. May 24, 2010). Thus, the trial court was free to consider two of the four of these convictions under enhancement factor (1), that the Defendant had a history of criminal convictions or criminal behavior, in addition to that necessary to establish his range. See Tenn. Code Ann. § 40-35-114(1).

Moreover, the Defendant has a 2006 felony conviction for "Schedule I Drugs" where he received an eight-year incarcerative sentence, and the Defendant seemingly ignores his eight misdemeanor convictions for various offenses, all further lending support to the application of enhancement factor (1). Additionally, the pre-sentence report is replete with instances to support the trial court's usage of enhancement factors (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, and (16), that the Defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(8), (16). The trial court accurately and appropriately considered the Defendant's prior criminal history.

Our review of the sentencing hearing transcript indicates that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the purposes and principles of sentencing prior to imposing a within-range sentence of confinement in this case. Therefore, the Defendant has failed to establish that the trial court abused its discretion in imposing the maximum four-year sentence for his failure to appear conviction, and he is not entitled to relief.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the sentencing decision of the Bedford County Circuit Court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE